and we'll hear the last case to be argued, a state of Keenan versus Hoffman Rosenfeld. And just is Ms. there she is. All right you're all present. Mr. Del Cole you may proceed. Thank you. If it pleases the court, preliminarily I want to thank the court for this opportunity. It is an honor and a professional milestone to make argument before you. I have grappled for weeks on how to approach this court in my opening remarks and it always gets back to the same point. The Keenan family on these facts, if nothing else, deserve their day in court to pursue justice and to the extent possible make matters right. 43 USC section 1983 promises that when the oppressive and overwhelming power of the government is used or abused in a way that inflicts constitutional harm upon a citizen, there is a remedy. It cannot be an empty promise or one that is so difficult to enforce. Counsel, counsel, what exactly did the district court get wrong in your view? In the district court's approach, by deeming the rule 56-1 admitted, the court ignored the facts and the evidence and adhered to a rule. And when you're dealing with questions of constitutional dimension and the crushing authority the government can exert, it would have been a better approach, a correct approach, to either permit a second opportunity to correct the defects cited. It also made evidentiary rulings that contributed to the determination and summary judgment that were incorrect. She excluded, the district court excluded, the affidavit of Michelle McCarthy. She excluded two affidavits from the attorneys that dealt with the case at the family court level and she excluded the affidavit of Dr. Robert Peister. Well some of these documents weren't sworn to, is that correct? It was correct. It was an affidavit. So how could the judge have admitted documents as affidavits that weren't sworn to? Well it was said it was deported and sworn and given under and true. It was not notarized. It was a clerical oversight. It was from a highly respected doctor, the chief of neuroradiology at Stony Brook Medicine, who was deposed, who they had notice of his existence, and all he did was mimic and mirror the testimony of Dr. Muir, a Northwell doctor, regarding the CT scans of the third, the fourth, and fifth, and highly criticized the MRI that the prosecution hung their hat on. Dr. Hopkins-Rosenfeld said, confirmed that Lana Keenan was a shaken baby when in fact she was not. So is there anything in the record to suggest a motivation for this? I mean you're suggesting that they either lied or they grossly exaggerated. Yes. Why would they do that? That is a major question in the case. Lana Keenan was admitted to Southside Hospital and over a period of minutes administered enough drugs that dropped her blood pressure from 106 over 59 to 57 over 26. Her heartbeat dropped by 46 beats per minute from 146 to 120. Maybe there's a medical malpractice claim of some kind, I don't know, but what makes this into a constitutional violation? I was presented with these in terrible shape, serious condition, and without any reasonable explanation. And was it unreasonable for the defendants, for the doctors, to be worried and suspicious that something inappropriate had happened? Well if you look at the testimony of Dr. Muir, the radiologist at Southside, I had a CT scan that would indicate that Lana Keenan suffered any subdural hemorrhage or hematoma or any any injury consistent with being shaken. His answer was an unqualified no. It was HIE and it had nothing to do, apples and oranges, with a traumatic injury. So there was no reason. What caused these injuries? The only people who were in a position who had first-hand knowledge of this were your clients. And they offered nothing. They had no explanation for how their child arrived at a hospital in critical condition. Yes they did. Lana Keenan choked on vomit. She was diagnosed with acid reflux, given Zantac. When she was revived at the house, Sarah Keenan testified that she sucked vomit out of Lana's throat and spit it on the floor. This baby was too young to roll over by herself. Isn't that true? She didn't roll over. Padraig Keenan testified at length that when he found Lana, she was on her side with her arm over her head. He has a very heavy Irish probe. What he said was she had vomit about her face. He testified under oath. He testified at his deposition that she was on her side. Where they got this rolled over, I don't know, but that's not what he testified to. Under whose care was this infant? The mother and the father at that time. She was suckled, breastfed, put down for a nap. And when Padraig came back up to check on her, he found her on her side, mildly cyanotic, blue lips, raced down the stairs. She was revived at the house. On the ambulance ride to the hospital, she appeared to be fully recovered. When she hit the hospital, the drugs were administered. And it's our theory, and Dr. Andreola, our expert, testified that even if she had an ischemic injury, the administration of those drugs drove her blood pressure down so far at a time when she needed blood the most. That was the point where we think they were What about qualified immunity? Is it objectively reasonable for a CPS worker to sign off on an affidavit that they have no understanding of? That is never objectively reasonable. You couldn't get two CPS workers of reasonable competence to sit down and agree that it's okay to sign to the truth and accuracy of an affidavit when you don't even know what it means. All they had to do was call Dr. Meter up and ask him, are these injuries consistent with being shaken? His answer is no. So Hockman, Rosenfeld, and Mittler, you had two worlds going on here. You had SVU and an early caseworker saying that there was no indication of any abuse. And then you have Hockman, Rosenfeld, as early as the 5th of January saying the child had subdural hematomas, and that was a lie. And that lie ended up cornering a petition that caused traumatic constitutional injury on behalf of my clients. Would you concede that your Rule 56 statement was not in compliance with the rule? I will concede that, but I'm also relying on the overwhelming constitutional injury here in this court's longstanding tradition of a de novo review. In my reply, like a closing a family court level with Hockman, Rosenfeld leading the way, was an absolute, outrageous case of misconduct. Quick question, Mr. Delcol on the procedure here. I read your brief several times, especially noting pages 27 and 28, where you do admit that the 56.1 statement that was filed on a little at a loss to understand your argument that we should review this all de novo. It looks to me like the question whether that error that you admit was fatal to your claims given what those admissions did to the issue of qualified immunity. The question that comes up in my mind here is, are you raising on appeal a direct challenge to the decision to award summary judgment based on the deemed admission of those facts? In other words, are you saying the judge, the judge appears being here, abused her discretion and invoke and deeming those admissions, deeming those, your opponents 56.1, that is the Northwell defendants facts to be admitted. Are you saying that was reversible error? I don't find that in your brief. I don't find you that you're challenging that. And I think you may have slaved it. Judge, my position is that when the lower court made its evidentiary rulings, they were incorrect. And that contributed to summary judgment. I candidly admit my rule 56.1 was deficient. However, I also point to cases like Colts v Rockefeller, where even in cases where the rule 56.1 or there are unsubstantiated accusations, assertions in the brief to the court, to the district court, this court standard is de novo. And I was relying on that longstanding tradition that this court, after redefining the record as it did in Porter v Quarantino, that this court properly do not know that it is an appealable issue to challenge a judge's decision that a rule 56.1 motion is defective. The issue in my mind before this court is a de novo review. And based on a de novo review, there are more than sufficient facts in this case to give this Keenan family their day in court before a jury. Thank you. You have some time for rebuttal. We'll hear from Mr. Simone. Good morning, Your Honors. Christopher Simone with the Northwell Defendants. I have to agree with Mr. Del Col on one issue, and that is this is a very sad and tragic case as it involves the death of a three-month-old infant. But I guess the best way to start here is where it left off, and that is the major procedural hurdle the plaintiff faces here with regard to the 56.1 statement. That issue is not addressed. And while plaintiff, I don't disagree that this court's power is de novo review of summary judgment, the review of a district court's treatment of a 56.1 statement is abuse of discretion. That's not raised in their brief. And so the de novo review that this court would embark on is based on the admissions by the plaintiff of the statement of facts of all the defendants. So these are the facts. And Mr. Del Col opened his argument by on these facts. Well, these facts in this case are not what the plaintiff postulated. They are the facts that were set forth in the moving parties because he didn't put in any facts. He didn't properly respond. And in addition to that, the court went further and actually looked at his evidence substantively and went through in detail as to why it was either inadmissible, unhelpful. It was frankly, some of it was fabricated, certainly not entirely genuine representation. If the district court elected to look at the evidence, notwithstanding the deficiency in the 56 F, do we do the same? Do you go beyond? Well, even if you looked at the deemed admitted facts and look at the evidence that was eventually offered, I mean, we do what the district court did. Well, even if you did that, you have to come to the same conclusion for the reasons that the district court did. But what's not disputed in this case is that this child had came to our hospital, you know, already had been dead for at least six minutes. What's not disputed is she had two retinal hemorrhages and HIE hypoxic ischemic encephalopathy. They dispute the extent of the two retinal hemorrhages and say that they were evidence that there was no basis for a diagnosis of shaken baby syndrome. I'm sorry. I'm sorry I interrupted you. Well, do you agree that there is evidence in the record to support the claim that there was nothing to support a shaken baby syndrome? No one ever diagnosed shaken baby syndrome. What happened was the Kenyans were trying to offer an explanation to Dr. Hoffman Rosenfeld about how this could have occurred. As Judge Stenson pointed out, Judge Barrington Parker pointed out, it's the only they're the only ones with information here. What she was explaining to them was what she explained in this case is that the injuries were consistent with with shaken babies, hyperflexion, hyperextension. But she accused anybody of that. She never accused the Kenyans of doing it. She merely said this is consistent with a non-accidental injury. It's consistent with trauma. Nobody disagreed with that. Plaintiffs have put an affidavit. It's like even Peister, the affidavit from Peister, whatever you want to call it, declaration that's not that's not properly sworn. He contradicted his own deposition testimony. Is there evidence that there was no trauma? Is there? No, there definitely was a trauma. Nobody disagrees that this was this was traumatic. This was a three-month-old child. If I can get to a few things about the motivation, the original motivation. Maybe I'm not articulating it well. I mean, trauma, I'm not sure what we mean by trauma now that we are speaking. Is there a factual question as to whether a reasonable health care provider would have been suspicious that there would have suspected abuse? There is absolutely no question about that, Judge. This was a necessary. This was right for mandated reporting. It was even before they got the MRI that showed the cervical ligament damage. If you think about it, the plaintiffs rely heavily on the Estevern case. Estevern involved a fractured wrist that there was a mandated report. This child had been dead for at least six minutes in critical condition when she arrived at the hospital. Two retinal hemorrhages. You have to look at this at the time it's occurring. It doesn't matter whether the injuries of this child were caused deliberately or caused negatively. It doesn't matter. It was an unexplained trauma and it was significant. This child was in significantly critical care when she when she arrived to us and even plaintiffs experts agreed that that injury occurred before she got to the hospital. You were about to say something about motive. The original motivation for this whole case was a plaintiff's conspiracy theory that the Northwell defendants are trying to cover up medical malpractice. Those plaintiffs never addressed our summary judgment motion on the merits to that extent, just claiming they would prove it at trial. They abandoned those claims because they never recommenced the action in state court because the court declined to exercise supplementary jurisdiction. So those claims are gone. There is no medical malpractice in this case. There's not even a motive. They don't need a motive, but there isn't a motive. Thank you. You're welcome. Thank you. All right. We'll hear from Ms. Zwilling. You have to unmute. You have to unmute. If it pleases the court, I'm Assistant County Attorney Arlene Zwilling. I represent Suffolk County and the Child Protective Services caseworkers. Defendant Joy DeCordova is the caseworker who commenced the child protective proceedings at issue in this case. The other caseworkers whom I represent are those who conducted the investigation that led up to the child protective proceedings. One of those caseworkers, Maureen Peterson, filed the pre-petitions and it was in response to those pre-petitions that the Kenans consented to giving temporary custody of their sons to Sarah Kenan's parents. In essence, Appellant's argument is that in granting summary judgment, district court failed to appreciate the severity of Appellee's asserted conduct and its effect on the Kenans. Petally, however, the dispositive facts upon which the motion was properly turned were not in dispute. And for that reason, district court focused on the right issue for summary judgment. And that was not the purported harshness of the caseworker's actions or their alleged consequences, but whether that alleged conduct amounted to a constitutional violation. We submit that Judge Feberstein correctly recognized that even if the caseworkers had actually engaged in the asserted wrongdoing, that conduct did not entail a violation of Appellant's constitutional rights as a matter of law. And therefore, there was no necessity for a trial. Now, there's no factual dispute that the Kenans were not seized and their physical was not restrained in any manner. And since their movements were not restrained, they have no section 1983 malicious prosecution claim. Case law does not support their position that the removal of the children from the parent's home can substitute for a restraint on liberty. Is this, you're saying this was not a prosecution? It was not a prosecution, your honor. It was a family. Is it not a quasi-prosecutorial proceeding, accusing them of abusing their baby? It is considered quasi, but it is for the benefit of the children and there is no criminal. Because you, in arguing absolute immunity, you're arguing that it's essentially a prosecutorial proceeding. Family court have on occasion been deemed to be quasi-prosecutorial. Just simply not... The two positions are inconsistent. A shade of a difference, I would submit, your honor. In any event, if the removal... Can you address qualified immunity? I mean, your brief had one page on qualified immunity. I mean, why does qualified immunity apply here? To better understand that, judge, I think we have to recognize that there are two separate cones of case workers involved here. One is Joy DeCordova, who swore out the petitions. The district court determined that she was entitled to absolute immunity because she acted in a quasi-prosecutorial mode. The other case workers did not file the petitions and the wrongdoing that the Kenan seek to attribute to them was an inadequate investigation. It is our position that to the extent that plaintiff seeks to impose liability for their investigative actions, that there would be no constitutional implications because inadequate investigation is not considered a constitutional violation, although a malicious prosecution would be. So there is a distinction between the two levels of conduct. Furthermore, if the removal of the children impacted anyone's constitutional rights, those would be the rights of the children and not the parents. That's the teachings of Sutherland and Kenan Bell. We would also submit that the severity of the alleged misconduct is likewise not a substitute for restraint on physical liberty. There's also no factual dispute, but that the parents consented to placing the they were not permitted to see their baby to be with their baby in the last month of her life. Is that not some kind of a restraint? Yes, Your Honor, but the Kenans do not appear to be challenging that aspect of the court orders. I think they do. I mean, I read their brief as arguing that that was a significant injury depriving them of the ability to spend any time with their baby in the last month of her life. They did not disagree before district court that that was pursuant to an order of the family court and therefore the caseworkers could not be held liable. I don't think that they are taking a different because there is no dispute that the Kenans consented to the placement of their sons with Sarah Kenan's parents. It is our position that they have no 14th amendment family interference claim. In any event, this claim is made for the first time on appeal and should not be considered. And just to conclude again, district court afforded only the caseworker Cordova who based on her quasi prosecutorial action. And we believe that that result or that thinking should be affirmed by this court. The remaining caseworkers who are alleged to have only engaged in a substandard investigation were afforded qualified immunity. At minimum, their claim conduct, which is deferring to the medical opinions of doctors, is, we would submit, objectively reasonable. Thank you. We'll hear the rebuttal from Mr. Delcol. We must remember that Dr. Hoffman Rosenfeld was describing Lana's injuries as being severe and extreme force on her neck and brain, whiplash scenarios, tantamount to a head-on car crash. This was not, there was no evidence ever, including a full-blown forensic pathological exam of her neck and spine that indicated this child was ever injured in any way. Yet the petitions in this case are very clear. This was a shaken baby case and it was a shaken baby case from the start, according to Hoffman Rosenfeld. And that was a lie. There was no evidence. So, Counsel, you're saying, and please correct me if I misunderstood you, that there was no evidence that this infant had been injured on arrival at the hospital? Zero. The first MRI of January 3rd showed global hypoxic ischemic injury, which is a lack of oxygen flowing to the brain, very similar, according to Dr. Andreola, of drowning, choking, or near SIDS. Why was the ambulance called if there was nothing wrong with the child? As a matter of fact, in his deposition, I believe, Parker said there was a debate because Lana had been resuscitated so fast. Your clients called an ambulance for their three-month-old, is that right? Right. Your Honor, there's no doubt. Are you telling us that they called an ambulance for their three-month-old when there was nothing wrong with the child? That doesn't really make a great deal of sense to me. What doesn't make sense, Your Honor, respectfully, is when Hoffman Rosenfeld is telling people that the injuries Lana suffered were the product of abuse. Why did the infant's mother call an ambulance? Because the child was discovered in the state she was. She was resuscitated and they took her to the hospital thinking they were coming right back. It was only when they were at the hospital that it was diagnosed that she had this oxygen-related insult to her brain. It was never trauma. Do you dispute that the child was dead for six minutes? Yes, we do. I don't know where they're getting that six-minute number. You dispute that? Yes, I don't know where they're coming up with that number. This child did not suffer a traumatic injury as was alleged by Hoffman Rosenfeld in concert with CPS workers who didn't do enough to pick up a telephone. Do you dispute that the child was in very serious condition when she was presented at the first hospital? Yes, she was in serious condition, but there was no indication, zero, of trauma. It was an accidental choking incident like she had in the hospital. We went to trial on this issue and they couldn't even meet a burden of proof of a preponderance of the evidence and the children were returned back. So there was never any legitimate evidence of Lona Keenan being shaken as alleged in the petition, as told to CPS by Dr. Hoffman Rosenfeld and Mitler. It never happened and because that never happened and it's been proven that it didn't happen, these people were torn to shreds. Their family, their children are still suffering and they have a right to have this question of fact presented to a jury. I believe the court's holding, Eman Gielo says that the determination of objective reasonableness is a mixed question of law and fact. Nothing about the petitions filed here is objectively reasonable. CPS workers don't even know what they're signing off on and doctors are able to mislead by a monopoly over the information what CPS workers actually know. They didn't do any investigation. Maureen Peterson didn't even speak with Lana Osara Keenan, with Padraig Osara. They didn't even talk to them. They didn't call Dr. Meir and say, hey, are these injuries consistent with being shaken? Because he would have said no. They took what they heard from Hockney Rosenthal at face value and took this family and tore them apart. It's that simple. Thank you all. We will reserve decision.